**UNITED STATES of America, Appellee,**

v.

**Da Cai CHEN, also known as Ah-choi, also known as Chen Da Cai, Defendant–Appellant.**

**No. 1181, Docket 96–1411.**

United States Court of Appeals, Second Circuit.

Argued March 14, 1997.

Decided Oct. 14, 1997.

Benjamin E. Rosenberg, New York City (Michael A. Pearce, Shereff, Friedman, Hoffman & Goodman, LLP, New York City, of counsel), for Defendant–Appellant.

Ira M. Feinberg, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Vernon Broderick, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: CARDAMONE, LEVAL, Circuit Judges, and WARD,* District Judge.

CARDAMONE, Circuit Judge:

Defendant Da Cai Chen appeals from a sentence imposed pursuant to a judgment of conviction entered June 21, 1996, in the United States District Court for the Southern District of New York (Stanton, J.) after appellant pled guilty to a charge of distributing, and possession with intent to distribute, heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. Chen contends on this appeal that the district court improperly refused to apply the Sentencing Guidelines' safety valve provision to sentence him below the ten-year mandatory minimum sentence otherwise required by law. He also asserts that the sentencing court, contrary to 18 U.S.C. § 3553(c), failed to state its reasons for sentencing him to a particular point in the applicable Guidelines range.

---

* Hon. Robert J. Ward, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

Central to the resolution of the issues raised on this appeal is the meaning of a plea agreement and of a Sentencing Guideline provision. Although the words used are plain, their meaning is not. In such event, as is the case here, we are required instead to examine the context and circumstances surrounding the use of those words to determine their meaning.

## BACKGROUND

### A. The Narcotics Investigation

Federal authorities learned of appellant Da Cai Chen's criminal activities during an FBI investigation of a heroin trafficking organization led by Lei Da–Tian (Lei). In April 1995, after FBI agents had gathered evidence for over a year, Lei and four of his associates were arrested and charged with various narcotics-related offenses. The FBI's investigation of others in Lei's confederacy continued after the arrest of the original five coconspirators. Chen was among those targeted in the second phase of the investigation.

The continuing investigation revealed that for almost two years Chen had acted as a courier for Lei, delivering and picking up packages of heroin on several occasions between November 1993 and July 1995. Defendant also stored and transported firearms for Lei and his associates. For example, between the subject dates he kept a box containing a machine gun, a revolver and bullets, and a bulletproof vest. Xaio Lin Jiang, who was arrested with Lei in April 1995, retrieved Chen's box and delivered it to Lei in March 1995. On another occasion Chen delivered a container to Lei where, alongside a bottle of liquor, a handgun was concealed. That container was discovered in a Lei organization apartment during a search conducted when Lei and his associates were arrested.

Appellant was arrested in 1995 and charged with conspiring to distribute heroin. He ultimately agreed, pursuant to a written plea agreement (Agreement), to plead guilty to a superseding indictment charging him with distribution of more than one kilogram of heroin. The distribution charge was based on Chen's admission that he had delivered more than one kilogram of heroin for Lei in December 1994.

### B. The Plea Agreement

In the Agreement, Chen conceded that he was involved in distributing between one and three kilograms of heroin, resulting in a base offense level of 32 under the Sentencing Guidelines, and that his possession of various firearms on Lei's behalf was "relevant conduct" justifying a two-level enhancement of his offense level under Guidelines § 2D1.1(b)(1). In return, the government agreed that an adequate plea allocution and timely plea would constitute evidence of acceptance of responsibility under Guidelines §§ 3E1.1(a) and 3E1.1(b)(2), meriting a three-level decrease in the offense level. Based upon these stipulated adjustments to the offense level, and assuming a Criminal History Category of I, appellant's sentencing range was determined to be between 108 and 135 months. Because conviction for the agreed-upon offense carries a ten-year mandatory minimum sentence, the Agreement stated that the effective sentencing range would be 120 to 135 months, that is, from ten years to 11 years and three months.

Both parties expressly undertook not to seek any departures or adjustments from the Guidelines range as calculated in the Agreement, although each retained the right to respond should the sentencing court or the Probation Department apply adjustments, departures, or calculations different from those agreed upon. In addition, Chen explicitly waived his right to appeal "any sentence within or below the stipulated Guidelines range (i.e., within or below the range of 120–135 months)."

### C. The Pre–Sentence Report and Sentencing

The pre-sentence report (PSR) prepared by the Probation Department incorporated the Guidelines calculation set forth in the Agreement. The PSR also averred that appellant possessed various weapons "during the commission of the instant offense." Prior to sentencing, Chen's counsel submitted a written objection disputing this factual assertion and the Probation Department's conclu-

sion that appellant was ineligible for the Guidelines safety valve provision as a result of the alleged gun possession. In response to appellant's argument that there was no evidence showing that he had carried a gun during the particular heroin delivery to which he was pleading guilty, the Probation Department amended the PSR to describe appellant's possession of a firearm as relevant conduct and therefore found that Chen was ineligible for the safety valve provision.

The sentencing court adopted the Guidelines calculation incorporated in the Agreement and the PSR, ruling that appellant's sentencing range was 120–135 months. In its written judgment form the court indicated (1) it was specifically adopting the factual findings and Guidelines application of the PSR, and (2) the sentencing range was less than 24 months and the court found no reason to depart from the Guidelines. Defendant was sentenced to the mandatory minimum term of 120 months imprisonment, to be followed by five years of supervised release. Chen appeals from the imposition of this sentence. We affirm.

## DISCUSSION

### I Waiver

■■■ Before reaching the merits of appellant's claims, we address the government's contention that this appeal is barred by Chen's express waiver of the right to appeal set forth in the Agreement. Ordinarily, a criminal defendant is entitled to appeal any sentence "imposed in violation of law." 18 U.S.C. § 3742(a)(1). The right to appeal may be waived as part of a plea agreement, see, e.g., United States v. Yemitan, 70 F.3d 746, 747 (2d Cir.1995), and we have stated that a knowing and voluntary waiver of the right to appeal a sentence within a particular Guidelines range is generally enforceable, compare United States v. Salcido–Contreras, 990 F.2d 51, 53 (2d Cir.1993) ("In no circumstances ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.") with United States v. Jacobson, 15 F.3d 19, 22–23 (2d Cir.1994) (express waiver

of right to appeal sentence does not preclude claim that sentence was based on constitutionally impermissible factor).

Applying these principles, appellant's express waiver of the right to appeal "any sentence within or below the stipulated Guidelines range," standing alone, appears to preclude his challenge to any sentence between 120 and 135 months. At the plea allocution, however, the magistrate judge erroneously informed Chen that

> ... by pleading guilty, you are giving up your right to appeal which you might otherwise have if you went to trial and were found guilty; the only thing you can appeal after today or after Judge Stanton accepts your plea is if the sentence he imposes is illegal, which is unlikely to happen? Do you understand that?

Chen responded in the affirmative and now contends that because the magistrate judge stated that he retained the right to appeal an "illegal" sentence, the waiver of the right to appeal any sentence—illegal or not—was not knowing and voluntary.

Chen relies primarily on United States v. Ready, 82 F.3d 551 (2d Cir.1996), where defendant Ready signed a plea agreement that included an express waiver of his right to appeal any sentence within a particular range. Like the magistrate judge in the instant case, the court sentencing Ready incorrectly stated at the plea allocution that the waiver applied only to legally imposed sentences. Id. at 557. The Ready panel declined to enforce the written waiver on the ground that, in light of the sentencing court's misstatement, the record did not "clearly demonstrate[ ]" that the waiver was knowing and voluntary. Id. at 557–58. Appellant argues that Ready requires us to find that his waiver of his right to appeal is unenforceable because the magistrate's statement in this case was nearly identical to that in Ready.

■■■ Although we do not interpret Ready to require invalidation of a waiver of appeal in every case where the sentencing court's explanation of the waiver is not completely correct, that case explicitly allows enforcement only "if the record 'clearly demon-

strates' that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary." *Ready*, 82 F.3d at 557. Here, the record of the plea hearing indicates that while the magistrate judge asked Chen several questions related to defendant's understanding of the consequences of pleading guilty rather than going to trial, she made no inquiries regarding his understanding of any of the specific terms of the Agreement. For example, the magistrate judge did not ask whether appellant had read the Agreement or, indeed, whether he could read. Nor did she identify the disputed waiver as part of the Agreement, asking only whether appellant understood that "by pleading guilty" he was giving up his right to appeal. In the absence of some affirmative evidence from which appellant's knowledge and understanding of the waiver provision could reasonably be inferred, *Ready* would appear to require us to hold that the magistrate judge's error rendered the waiver ineffective.

## II Merits

### A. *Eligibility for the Safety Valve Provision*

■ Assuming the waiver is ineffective, we turn to the merits of the appeal. Chen maintains first that the district court's determination that he was ineligible for the Guidelines' safety valve provision, 18 U.S.C. § 3553(f), was based on an erroneous interpretation of that provision. Under the safety valve feature, a sentencing court must disregard statutorily mandated minimum sentences for certain narcotics offenses where the defendant is among the least culpable defendants to whom the mandatory minimum applies. Section 3553(f)(1)-(5) sets forth five criteria for determining eligibility for the "safety valve" benefit. Specifically, a defendant must *not* have: (1) more than one criminal history point; (2) used violence, or credible threats of violence, or possessed a firearm "in connection with the offense;" (3) committed an offense that resulted in death or serious injury; (4) been a leader or manager of others in the offense or been engaged in a continuing criminal enterprise; or (5) failed to provide to the government, prior to sentencing, all

information and evidence he has concerning the offense or offenses that were part of the same course of conduct. Section 3553(f) is implemented through § 5C1.2 of the Sentencing Guidelines. *See* U.S.S.G. § 5C1.2.

The government concedes that appellant satisfies elements (1), (3), (4) and (5). With respect to criterion (2), appellant admits that he possessed a firearm in connection with his heroin trafficking activities, but argues that § 3553(f)(2) applies only to possession of a firearm during the particular *offense* for which he stands convicted. Thus, he insists, because he did not possess a weapon during the particular heroin delivery to which he ultimately plead guilty, he satisfies all five of the safety valve criteria.

In support of this position, Chen focuses on the language of the second and fifth safety valve requirements. Subsection (2) excludes from safety valve consideration a defendant who possesses a weapon "in connection with the offense." Subsection (5) requires a defendant to "truthfully provide[ ] . . . all information and evidence . . . concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Appellant urges that "offense" must have the same meaning in both subsections of the statute, and that the phrase "that were part of the same course of conduct" in subsection (5) would be superfluous if "offense" included both the offense of conviction and other relevant conduct. Alternatively, he declares that the juxtaposition of the two subsections establishes the ambiguity of the statute with respect to the meaning of offense, and, hence, the rule of lenity requires resolution of the ambiguity in his favor.

■ We are unable to adopt this suggested interpretation of the statute and the Guidelines because it conflicts with the commentary to Guidelines § 5C1.2. Application Note 3 to § 5C1.2 defines both " '[o]ffense,' as used in subdivisions (2)-(4), and 'offense or offenses that were part of the same course of conduct or of a common scheme or plan,' as used in subdivision (5)" as including the offense of conviction and all relevant conduct. U.S.S.G. § 5C1.2, comment., (n.3). Sentencing Commission commentary that interprets or explains a provision of the Guidelines is

analogous to an administrative agency's interpretation of its own regulations, and, as such, is entitled to controlling weight from the courts unless it violates the Constitution or a federal statute or is inconsistent with, or a plainly erroneous reading of, that Guideline. *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

The effect of this rule, however, is somewhat less certain where the commentary at issue relates to a Guidelines section that mirrors the language of a statute because the Sentencing Commission is not necessarily considered an authoritative source for the interpretation of federal sentencing statutes. Yet, in enacting the § 3553 Congress specifically directed the Commission to promulgate "guidelines ... to carry out the purposes of this section" and "policy statements ... to assist in the application of this section." Violent Crime Control and Law Enforcement Act of 1994, Pub L. No. 103–322, tit. VIII, § 80001(b)(1)(A), 108 Stat. 1796, 1986 (1994). This delegation of authority reflects the fact that the legislature anticipated the Commission would interpret § 3553 and intended the Commission's interpretation to control, provided it was consistent with the purposes of the statute. The Application Note's inclusion of "relevant conduct" in subsection (2) conforms with Congress' aim to exempt from mandatory minimum sentences only those defendants who play relatively minor, nonviolent roles in narcotics offenses. *See* H.R.Rep. No. 103–460, 1994 WL 107571. It would be contrary to that purpose to allow a defendant who possesses a weapon as part and parcel of his general narcotics-related activities—but fortuitously did not happen to carry a weapon during the offense to which he pled guilty—to gain the benefit of § 3553.

Moreover, appellant's suggested reading ignores the phrase "in connection with" as it is used in subsection (2) of the statute. Even if we agreed that "offense" means only the offense of conviction, as appellant insists, *"in connection with the offense"* surely means something more than *during* the offense. *See United States v. Burke,* 91 F.3d 1052, 1053 (8th Cir.1996) (per curiam). Although we have not yet had occasion to construe the "in connection with" language of § 5C1.2, we have construed identical language used in § 2K2.1, which provides for an offense level enhancement for possession of a firearm "in connection with" a felony. *See United States v. Spurgeon,* 117 F.3d 641 (2d Cir.1997). In *Spurgeon,* we ruled that "in connection with" is equivalent to the "in relation to" language of 18 U.S.C. § 924(c)(1) and is satisfied when the government establishes, by a preponderance of the evidence, that the firearm "served some purpose with respect to" the offense. *Id.* at 643–44.

The record amply supports the district court's finding that Chen's storage of various firearms on Lei's behalf related to his position as a courier for the Lei conspiracy. Chen regularly stored weapons that were intended for use as part of the conspiracy. One of those weapons was in his possession, and therefore available for his use, at the time of the 1994 heroin delivery for which he was actually convicted. Appellant's access to and possession of the guns for the benefit of the Lei conspiracy to distribute heroin, of which the offense of conviction was a part, establishes that the firearms were held "in connection with" the particular heroin delivery to which he plead guilty. *Cf. United States v. Wilson,* 114 F.3d 429 (4th Cir.1997) (firearm was possessed in connection with conspiracy to which defendant plead guilty where defendant admitted possession during period of involvement in conspiracy); *United States v. Wilson,* 106 F.3d 1140 (3d Cir.1997) ("in connection" language satisfied where defendant arrested for gun possession during three month period of involvement with drug conspiracy); *United States v. Hallum,* 103 F.3d 87 (10th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1710, 137 L.Ed.2d 834 (1997) (rifle found in truck near defendant's marijuana field was connected to offense of manufacture of marijuana because it had potential to facilitate the offense).

Further, the statute does not contain an ambiguity that would make appellant eligible for the safety valve provision under a rule of lenity. Chen has already benefited from a sentence reduction through plea negotiations regarding his participation in the conspiracy to distribute heroin originally charged

against him in the indictment. We see no reason to afford him the additional advantage of the safety valve in the face of clear evidence that he played a key role in keeping the Lei conspirators armed with weapons. Chen was fully informed, both in the Agreement and by oral representations made at the plea allocution, that he faced a minimum sentence of 120 months imprisonment, the sentence actually imposed on him.

### B. *Statement of Reasons*

Finally, Chen avers the sentencing court failed to explain its reasons for sentencing him to a particular sentence within the applicable Guidelines range. Under 18 U.S.C. § 3553(c), a sentencing court is required to "state in open court" its reasons for imposing a particular sentence, and, if the sentence is "of the kind, and within the range, [established under the Sentencing Guidelines, and that range exceeds 24 months], the reason for imposing a sentence at a particular point within the range." *See United States v. Chartier*, 933 F.2d 111, 117 (2d Cir.1991). When the court fails to offer an adequate statement of reasons, the sentence must be vacated unless and until the court complies with § 3553(c)(1). *See United States v. Zackson*, 6 F.3d 911, 923–24 (2d Cir.1993).

The parties agree that appellant's sentencing range under the Guidelines was 108–135 months, a 27 months range. The court found, however, that because Chen was subject to a mandatory minimum sentence of 120 months, the effective sentencing range was 120–135 months—a range of 15 months. Appellant asserts that for purposes of § 3553(c), only the range calculated under the Guidelines, without regard to the effect of applicable mandatory minimum statutes, is relevant. Neither this Circuit nor any other appears to have addressed this issue, and we need not resolve it on these facts. Appellant concedes in his reply brief that if he is subject to the mandatory minimum sentence of 120 months, the court's failure to state its reasons for sentencing him to 120 months is harmless error, if error at all. Consequently, because a remand cannot produce a lesser

sentence, we need not reach or determine the merits of appellant's second claim.

### CONCLUSION

For the foregoing reasons, the sentence imposed by the district court is affirmed.