UNITED STATES of America, Appellee,

v.

Kimberly GOODMAN, Defendant–Appellant.

Docket No. 97–1513.

United States Court of Appeals, Second Circuit.

Argued Sept. 1, 1998.

Decided Jan. 20, 1999.

Herbert L. Greenman, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, N.Y., for defendant-appellant.

Anthony M. Bruce, Asst. U.S. Atty., Buffalo, N.Y. (Denise E. O'Donnell, U.S. Atty., Buffalo, N.Y., on the brief), for appellee.

Before: NEWMAN, CARDAMONE, and PARKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The recurring use in plea bargains of variously worded provisions waiving a defendant's right to appeal once again presents an

issue of the validity of such a waiver. In the agreement in this case, the appellant waived the right to appeal any sentence within the statutory maximum. The validity of the waiver arises on an appeal by Kimberly Goodman from the August 20, 1997, judgment of the District Court for the Western District of New York (Richard J. Arcara, District Judge), convicting her, on a plea of guilty, of one count of mail fraud in violation of 18 U.S.C.A. § 1341 (West Supp.1998), and imposing a sentence that included 30 months of imprisonment. Goodman challenges the District Court's denial of her motion to withdraw her guilty plea and two aspects of the calculations under the Sentencing Guidelines. The Government contends that the waiver of appellate rights concerning the sentence should be enforced and the appeal from the sentence should be dismissed because the sentence was within the statutory maximum.

We hold that the appeal waiver provision used by the United States Attorney's Office for the Western District of New York in Goodman's plea agreement is not enforceable under the circumstances of this case. On the merits, we conclude that the District Court did not exceed its discretion in denying Goodman's motion to withdraw her plea and that the sentence was correctly calculated. We therefore affirm.

## Background

From the mid–1980s through early 1992, Goodman worked as a commodities broker at REFCO Securities, Inc. ("REFCO"), a New York based securities broker-dealer. Through her work at REFCO, Goodman came to know Steven Wymer, an investment advisor in Irvine, California. Goodman eventually became involved with a fraudulent scheme orchestrated by Wymer.

Promising extraordinarily high rates of return, Wymer induced individual and municipal clients to place funds under his control. Wymer instructed his clients to deposit their money in accounts at REFCO, telling them that he used REFCO to make purchases and sales of securities and as a custodian of clients' funds. Almost immediately after a client deposited funds with REFCO, Wymer would raid the account, using one client's money either to pay other clients or to enrich himself.

To facilitate this plan, Wymer enlisted an employee at his investment advisory firm to generate false documents showing exaggerated account balances and transactions that had not occurred. However, because accounting firms that audited the financial condition of some of Wymer's municipal clients periodically would ask for verification of the clients' account balances at REFCO, it became necessary for Wymer to enlist an insider at REFCO. For this purpose, Wymer turned to Goodman.

Wymer instructed his clients to send audit confirmation inquiries to Goodman's attention at REFCO. When Goodman received these inquiries, she would telephone Wymer's office to ascertain what fraudulent information Wymer's employee had given the client. Goodman would then prepare a form verifying this false information and mail it to the client's auditor. The municipal clients and their auditors relied on the false REFCO verifications in projecting municipal spending. Apparently in exchange for her assistance, Goodman received two luxury automobiles from Wymer.

Wymer was ultimately convicted of charges arising from a series of fraudulent schemes. Wymer's schemes resulted in losses of over $100 million to his clients.

The United States Attorney for the Central District of California filed a one-count information charging Goodman with mail fraud in connection with her preparation and mailing of a single false audit verification to the auditors of one of Wymer's municipal clients. Goodman executed both a Waiver of Indictment and a Consent to Transfer of Case for Plea and Sentence, resulting in the transfer of her case to the Western District of New York. Goodman then appeared before Judge Arcara, at which time she re-executed the Waiver of Indictment and entered a guilty plea pursuant to a written plea agreement.

The plea agreement stipulated that Goodman's adjusted offense level was 12 and her criminal history category was I, which yielded a sentencing range of ten to sixteen

months. The adjusted offense level reflected a reduction of four levels because Goodman had been a "minimal participant," *see* U.S.S.G. § 3B1.2 (1997), and two levels for her acceptance of responsibility, *see* U.S.S.G. § 3E1.1 (1997). As is typical, the plea agreement cautioned that neither the Probation Office nor the District Court was bound by the agreed upon Guidelines calculation. Spelling out the implications of this fact, the agreement stated, "You understand that if the Court ascertains factors different from those contained in the stipulation, you cannot, for that reason alone, withdraw your guilty plea." In addition, Goodman agreed that if she breached the plea agreement in any way, the Government would no longer be bound by its sentencing recommendation.

The plea agreement also contained a section titled "Waiver of Appeal." It stated that Goodman "knowingly and voluntarily waive[d her] right to appeal any sentence ... imposed by the Court and the manner in which the sentence is determined so long as [the] sentence is within the statutory maximum specified above." During the plea allocution, this provision was read to Goodman, and she affirmed that she understood "everything." Judge Arcara then made the following comment on the appeal waiver:

> There will be no appeal except two ways; one, that departure we talked about before; two if there's an offense determination that is recommended by the probation office, I look at it and let's say it's a higher number and you disagree with me on that, you'd have a right to appeal that.

Though this statement was not entirely clear and appeared to be inconsistent with the language of the plea agreement, Goodman stated that she understood the judge's comment.

On the date set for sentencing, the District Judge stated that he had serious concerns regarding Goodman's role in the offense, and directed both parties and the Probation Office to prepare reports on the issue. During a hearing on that issue, Judge Arcara voiced his concern that Goodman had not accepted responsibility for her actions and, therefore, might not be entitled to a two-level reduction pursuant to section 3E1.1. Goodman's Pre-sentence Report indicated that although she recognized that her actions facilitated the Wymer scheme and accepted responsibility for "her lack of due diligence," she maintained that she "d[id] not act with criminal intent or knowledge."

A week before the date set for sentencing, Goodman moved to withdraw her plea on the ground that the sentence the District Court was likely to impose would substantially exceed the sentence she expected when she entered into the plea agreement. A week later, the District Judge requested briefs on the issues of whether Goodman was entitled to a reduction for acceptance of responsibility and should receive an enhancement for an abuse of trust, pursuant to section 3B1.3.

Thereafter, the District Court denied Goodman's motion to withdraw her plea, finding that her desire to avoid a sentence more severe than she had expected at the time of her plea agreement did not constitute "a fair and just reason" warranting a plea withdrawal prior to sentence, under the standards of Fed.R.Crim.P. 32(e). The District Court also rejected Goodman's argument that she should be allowed to withdraw her plea because, in her view, the Government had breached the plea agreement by arguing against an offense level reduction for acceptance of responsibility and for an abuse-of-trust enhancement. The District Court found that the Government's submission on these issues had not advocated a position on the ultimate sentence but had only endeavored to supply the Court with the law and the facts, and therefore did not violate the plea agreement. Indeed, the District Court found that Goodman had breached the plea agreement by moving to withdraw her plea.

In the same ruling, the Court held that the defendant had failed to prove by a preponderance of the evidence that she was entitled to a reduction in her offense level for her role in the offense or for acceptance of responsibility, but the Court declined to make an upward adjustment for abuse of trust. The District Court sentenced the defendant, principally, to thirty months of imprisonment.

Discussion

## I. Motion to Withdraw Plea

██ A motion to withdraw a guilty plea before a sentence is imposed may be granted "if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(e). Nevertheless, a defendant "has no automatic entitlement to have such a motion granted, for '[s]ociety has a strong interest in the finality of guilty pleas,' and allowing withdrawal of pleas not only 'undermines confidence in the integrity of our judicial procedures,' but also 'increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997) (quoting *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989)). We have explicitly stated that " '[t]he fact that a defendant has a change of heart prompted by his reevaluation of . . . the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.' " *Id.* (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992)).

██ A defendant bears the burden to persuade the district court that she has fair and just reason to withdraw her plea. *See United States v. Williams*, 23 F.3d 629, 635 (2d Cir.1994). We review the findings of fact that led to the denial of the withdrawal motion for clear error; the decision itself is reversed only if it constitutes an abuse of discretion. *See id.*

██ Goodman contends that she should have been allowed to withdraw her plea for two reasons. First, she argues that because the District Court was not going to grant a downward adjustment for her role in the offense, she faced a sentence of incarceration significantly longer than the sentence she anticipated when she entered into the plea agreement. The District Court properly rejected this claim as an invalid ground for withdrawal of a plea. *See Maher*, 108 F.3d at 1529.

██ Second, Goodman argues that she should have been allowed to withdraw her plea because the Government breached the plea agreement by submitting a brief on the issues of an acceptance-of-responsibility reduction and an abuse-of-trust enhancement. The plea agreement had stipulated to upward adjustments for the amount of the loss, *see* U.S.S.G. § 2F1.1(b)(1)(K) (1997), and for more than minimal planning, *see id.* § 2F1.1(b)(2), and downward adjustments for "minimal" participation, *see id.* § 3B1.2(a), and acceptance of responsibility, *see id.* § 3E1.1. In the plea agreement, both parties had agreed to "waive the right to argue that other specific . . . adjustments . . . may be appropriate."

The Government's submission concerning an abuse-of-trust enhancement and an acceptance-of-responsibility reduction is not a ground for relief. In the first place, it was Judge Arcara, not the Government, who raised questions about these adjustments. Judge Arcara directed the Government to provide him with the pertinent information, which was clearly within his power. Second, the Government expressly stated in its written submission that "neither the Court nor counsel should view [the] Memorandum as advocating a position by the Government on either issue addressed." Government's Memorandum of Points and Authorities at 2. Third, and most important, the Government in fact did not advocate that an abuse-of-trust enhancement should be imposed or that an acceptance-of-responsibility reduction should be denied. The Government's submission stated that "the Court *could* find that defendant Goodman's conduct technically constitutes an 'abuse of trust' " and that "the Court *could* find that the defendant Goodman's attempt to withdraw her plea militates against her receiving a reduction . . . for 'acceptance.' " *Id.* (emphases added). This view of the relevant guidelines did tend to offer some slight support for the enhancement and for denial of the reduction, and the Government might have been better advised to inform the Court that, because of the plea agreement, it would have to refrain from saying anything concerning these matters. Nevertheless, the Government's compliance with the District Court's direction to comment on the facts and the law did not violate the plea agreement. *See United States v. Merritt*, 988 F.2d 1298, 1313 (2d Cir.1993).

Under these circumstances, the District Court did not exceed its discretion in concluding that Goodman failed to demonstrate a fair and just reason warranting withdrawal of her guilty plea.

## II. Sentencing

### A. Waiver of Right to Appeal

The Government contends that Goodman's appeal should be dismissed to the extent that she challenges her sentence because she waived the right to appeal any sentence so long as it does not exceed the maximum term allowed under 18 U.S.C. § 1341—five years' imprisonment.

The validity of a waiver of the right to appeal a sentence has been a recurring issue in this Court. We have regularly enforced knowing and voluntary waivers in the conventional form that waive the right to appeal a sentence *within (or below) an agreed guideline range, see, e.g., United States v. Chen,* 127 F.3d 286, 288 (2d Cir.1997); *Maher,* 108 F.3d at 1513; *United States v. Ready,* 82 F.3d 551, 555 (2d Cir.1996); *United States v. Yemitan,* 70 F.3d 746, 747 (2d Cir.1995), though even a limited waiver of this sort does not relinquish appellate rights "in every circumstance," *see Yemitan,* 70 F.3d at 748; *see also United States v. Jacobson,* 15 F.3d 19, 22–23 (2d Cir.1994) (reliance on unconstitutional factor may invalidate waiver). Where the waiver more broadly purports to waive the right to appeal a sentence *within (or below) whatever guideline range the sentencing judge determines is applicable,* we have encountered more difficulty. We rejected the validity of such a waiver in *United States v. Martinez–Rios,* 143 F.3d 662, 668–69 (2d Cir.1998), and, with some hesitancy, permitted its use in *United States v. Rosa,* 123 F.3d 94, 97–102 (2d Cir.1997), under circumstances where the defendant obtained substantial benefits from the plea bargain and the sentence imposed was only slightly above the top of the predicted guideline range. The *Rosa/Martinez–Rios* form of waiver leaves a defendant free to appeal an upward departure but denies him the opportunity to challenge the correctness of the sentencing judge's determination as to the applicable guideline range. *See Martinez–Rios,* 143 F.3d at 668.

■■ The waiver in the pending case is even broader than the *Rosa/Martinez–Rios* form, since the waiver purports to deny the defendant any appellate challenge not only to the selection of an applicable guideline range but also to any upward departure from that range, as long as the statutory maximum is not exceeded. Though we have no need to consider whether this broad form of waiver might ever be enforceable, *see United States v. Atterberry,* 144 F.3d 1299, 1300–01 (10th Cir.1998) (enforcing similar waiver provision), we conclude that it is not enforceable in this case. As we noted in *Rosa,* an "unorthodox [appellate waiver] agreement presents grave dangers and implicates both constitutional questions and ordinary principles of fairness and justice" necessitating "a close look." *Rosa,* 123 F.3d at 99.

Taking that "close look," we first note that Goodman received very little benefit in exchange for her plea of guilty. She pleaded guilty to the one count of mail fraud charged in the information, and the Government conceded that this was the only one of Goodman's alleged activities that it believed it could prove if the case went to trial. Second, although Goodman obtained the Government's agreement to recommend a four-level downward adjustment for her role in the offense and a two-level adjustment for her acceptance of responsibility, she received neither reduction at sentencing. Third, although Goodman assured the District Court that she had read the plea agreement and understood the waiver provision, the sentencing judge's statement to Goodman during the plea allocution left her understanding of the provision in considerable doubt. Judge Arcara suggested, contrary to the language of the agreement, that Goodman would retain the right to appeal her sentence if he concluded that either an upward departure or an offense level different from the stipulated level was appropriate. Finally, we note that the discrepancy between the sentence imposed—thirty months in prison—and the predicted sentencing range—ten to sixteen months—is substantial. The sentence im-

posed is nearly twice as long as the high-end of the predicted guideline range.

█ In light of all of these circumstances, we will not enforce the broad form of waiver in this case, one that would subject the defendant to "a virtually unbounded risk of error or abuse by the sentencing court." *Rosa,* 123 F.3d at 99. And, as in *Martinez–Rios,* we conclude that the appropriate remedy is to sever the waiver from the remainder of the plea agreement and consider the merits of Goodman's sentencing appeal. *See Martinez–Rios,* 143 F.3d at 669.

**B. Reduction for Role in the Offense**

█ Section 3B1.2 of the Guidelines provides for a four-level downward adjustment if the defendant was a minimal participant in criminal activity, and a two-level downward adjustment where the defendant was a minor participant. Goodman contends that the District Court erred when it found that her role in the offense was neither minor nor minimal. We review such factual determinations for clear error. *See United States v. Martin,* 78 F.3d 808, 814 (2d Cir.1996).

The District Court ruled that because Goodman was charged with only a small part of the Wymer scheme and her base offense level was calculated on the basis of her limited role, the further benefit of a minor role reduction was not warranted. We have upheld the denial of a minor role adjustment in the analogous context of a conspiracy conviction, where a defendant's base offense level is calculated on the basis of his somewhat limited role in the conspiracy. *See United States v. Lewis,* 93 F.3d 1075, 1085 (2d Cir.1996).

Here, Goodman was charged and convicted on the basis of her role in fraudulently confirming only one audit verification. Though the scope of her activity was not as extensive as that of other participants in Wymer's fraudulent scheme, her significant role in accomplishing her portion of the fraud did not require a minor role reduction.

**C. Reduction for Acceptance of Responsibility**

█ Goodman also contends that the District Court erred by not granting her a reduction for acceptance of responsibility. Section 3E1.1(a) of the Guidelines provides that a defendant's offense level shall be decreased "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Although many defendants who plead guilty receive this two-level adjustment, a defendant who enters a guilty plea "is not entitled to an adjustment under [§ 3E1.1] as a matter of right," U.S.S.G. § 3E1.1, comment. n. 3, and a sentencing court's denial "is entitled to great deference on review," *id.* n. 5; *see also United States v. Remini,* 967 F.2d 754, 760 (2d Cir.1992).

Despite her entry of a guilty plea and initial admissions that she knew the audit confirmations were false and that she had acted with intent to defraud, Goodman subsequently maintained that she had acted without criminal intent and merely failed to exercise due diligence in reviewing the audit confirmations. The District Court was entitled to conclude that a defendant who expresses regret for the results of criminal conduct without admitting criminal intent does not accept responsibility within the meaning of the Sentencing Guidelines. *See United States v. Moskowitz,* 883 F.2d 1142, 1155 (2d Cir.1989); *see also United States v. Williams,* 940 F.2d 176, 183 (6th Cir.1991). In the circumstances of this case, the Court was also entitled to rely on Goodman's motion to withdraw her guilty plea. *See United States v. Negron,* 967 F.2d 68, 73 (2d Cir. 1992) ("[T]he court must evaluate the reason for the attempt to withdraw the plea and assess the acceptance-of-responsibility question in that light."). The District Court correctly applied *Negron* by determining that:

> defendant states that she wants to withdraw her plea because she anticipates that she will receive a sentence more severe than she expected when she agreed to take a plea. In the Court's view, this reason for withdrawing the plea demonstrates a lack of sincere remorse on the part of the defendant.

**Conclusion**

The Government's motion to dismiss the appeal from the sentence is denied, and the

judgment of conviction and sentence is affirmed.