**UNITED STATES of America**

v.

**Ivania Maria COUTO, Defendant.**

**No. 00CR304.**

United States District Court,
N.D. New York.

Nov. 9, 2001.

## DECISION & ORDER

MCAVOY, District Judge.

Defendant Ivania Maria Couto (Couto) was charged as part of a thirty-four count indictment involving numerous individuals in a scheme of trading money or drugs for Greencards. Couto pled guilty to one count of the indictment, bribery of a public official in violation of 18 U.S.C. § 201(b)(1)(A) & (2). She now moves pursuant to Fed.R.Crim.P. 32(e) to withdraw her plea. Following a Decision and Order dated November 1, 2001, this Court held an evidentiary hearing to allow Defendant to put forward evidence regarding her claims.

Couto asserts that she was misled by her former counsel at the time of her plea. Specifically, Couto alleges that she believed that she would not be deported and that she could avoid deportation through various tactics even if she plead guilty to the bribery charge. Couto further asserts that she believed she was innocent of the crimes charged and that she only pled guilty because she was told she could avoid jail time if she did so.

## I. Standard for Withdrawal of a plea

A guilty plea may be withdrawn prior to sentencing for "any fair and just

reason." Fed.R.Crim.P. 32(e). A defendant does not have an absolute right to withdraw her plea. *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir.1998). The burden is on the defendant to show a "fair and just reason" and, in the absence of a violation of Rule 11, all inferences must be drawn in favor of the government. Although a district court has wide discretion in accepting a withdrawal, the withdrawal of a guilty plea is accepted "only in rare circumstances." *United States v. Fernandez–Antonia*, 2000 WL 1716436, at *3 (S.D.N.Y. Nov.15, 2000). This policy reflects the recognition that "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas 'undermines confidence in the integrity of our procedures . . ., increas[es] the volume of judicial work, [and] delays and impairs the orderly administration of justice.'" *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) (citations omitted). Consequently, a change of heart after re-evaluation of the government's case or after discovering that a sentence is higher than originally contemplated does not provide a "fair and just reason" for withdrawal. *United States v. Sagginario*, 2001 WL 185051, at *2 (E.D.N.Y. Feb.16, 2001)(citing *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) and *United States v. Goodman*, 165 F.3d 169, 173 (2d Cir.), cert. den'd. 528 U.S. 874, 120 S.Ct. 318, 145 L.Ed.2d 150 (1999)).

■ Factors for the district court to consider are the amount of time between the plea and the motion to withdraw, whether the defendant is now asserting her legal innocence, and the prejudice to the government. *United States v. Karro*, 257 F.3d 112, 117 (2d Cir.2001). The Court looks to the totality of the circumstances when making this determination. Couto essentially advances three arguments to this Court. First, she argues that the incorrect advice she received regarding the immigration consequences of her plea renders her plea involuntary. Second, she argues that she was provided with ineffective assistance of counsel. Finally, she advances her legal innocence as a grounds for withdrawal of the plea.

## II Failure to Advise of Consequences of Plea

■ Defendant's first claim falls somewhat outside the parameters of the traditional arguments under Rule 32(e). Defendant asserts that her plea was not voluntary because she was misadvised by her attorney as to the consequences that pleading guilty would have on her immigration status. While it has been the accepted law in this Circuit that an attorney's failure to inform his client about immigration consequences does not amount to ineffective assistance of counsel, *see United States v. Santelises*, 509 F.2d 703 (2d Cir.1975), and the failure of the Court to inform the defendant about possible immigration consequences is not a violation of Fed. R. Crim. P. 11. *See Michel v. United States*, 507 F.2d 461 (2d Cir.1974),[1] this Court granted an evidentiary hearing because the allegations of the Defendant went beyond a mere failure to inform. Defendant alleges that she was affirmatively misinformed that once the criminal proceeding was over, "there were things that could be done about the immigration proceedings." Affirmative misstatements by counsel are potentially grounds for finding a fair and just reason to allow a defendant to withdraw her plea. *See United States v. Santelises*, 509 F.2d 703

---

**1.** A review of the plea allocution reveals that the issue was never addressed during the allocution.

(1975)(affirmative misrepresentation could be reason to allow the withdrawal of a plea); *United States v. Santelises,* 476 F.2d 787 (2d Cir.1973)(same); *United States v. Zilberov,* 162 F.3d 1149, 1998 WL 634211 (2d Cir.1998)(Table)("trial counsel's alleged warning of 'possible' deportation may have been inaccurate and, arguably, objectively unreasonable."); *see also Kyem v. United States,* 2000 WL 1458806, *2 (S.D.N.Y. Sept.29, 2000).

It does appear that Defendant was given some inaccurate legal advice regarding the future of her immigration status. Counsel for the Defendant at the time of the plea testified that he told her that they would "take care of the criminal matter first and then worry about immigration." He also confirmed Defendant's statements that she gave him money to retain an immigration attorney for advice prior to the plea, but the record shows that no immigration attorney was hired until after the plea was taken. Both Defendant and her counsel testified that she was told there were things that could be done to prevent deportation, including obtaining a recommendation from the judge at sentencing against deportation.

The amendments to immigration law which occurred in 1996, including both the Illegal Immigration Reform and Immigrant Responsibility Act, 110 Stat. 3009 (1996) and the Antiterrorism and Effective Death Penalty Act, 110 Stat. 1214 (1996), eliminated the avenues described by Defendant and her trial counsel. In fact, deportation for one convicted of a qualifying crime is now virtually automatic. *See Zilberov v. United States,* 1998 WL 846795, at *1 (E.D.N.Y.1998); *United States v. Abdel–Karim A. El–Nobani,* 145 F.Supp.2d 906, 2001 U.S. Dist. Lexis 6241 (N.D.Ohio May 2, 2001). Thus, the advice may have been erroneous. This erroneous advice is not, however, enough to allow withdrawal of the plea.

In an analogous situation, where a defendant has been advised of the maximum sentence she could receive, even if the attorney has erroneously advised her as to the likelihood of a lesser sentence, withdrawal is not appropriate. *Goodman,* 165 F.3d at 173 (defendant advised of maximum sentence could not withdraw plea even though attorney had erroneously advised her that sentence would be less than that imposed). Defendant was asked whether she knew that deportation was, in fact, a possible consequence of her plea of guilty. She admitted that she did know deportation was possible, but believed she could stop it from happening. In *United States v. Sweeney,* the Circuit Court found no abuse of discretion where the district court did not allow a defendant to withdraw a plea based on a sentence higher than contemplated by the defendant. 878 F.2d 68, 69 (2d Cir.1989). "[W]hen appellant pled guilty, he was aware that he faced a maximum prison term of ten years on the conspiracy count and a maximum term of five years on the false statement count. He also understood that the sentence to be imposed was 'within the sole discretion of the sentencing judge ...'" *Id.; accord United States v. Taylor,* 242 F.3d 369, 2000 WL 1786338, at *3 (2d Cir.2000)(Table). The circuit court made this determination despite evidence that Sweeny had been erroneously advised by his attorney as to the possibilities of contesting his sentence.

There does not appear to be any significant difference between a defendant who knows that deportation is a possibility but believes she can do something to avoid it and a defendant who knows that a particular maximum sentence is possible but believes she can do something to lessen that sentence. Defendant Couto was also

aware that she faced deportation as a possible "maximum penalty" for her plea of guilty. Consequently, the erroneous advice of her counsel does not rise to the level necessary to allow her to withdraw her plea. *See also Zilberov v. United States,* 1998 WL 846795 (E.D.N.Y.1998)(making the analogy between deportation and a maximum sentence in context of ineffective assistance of counsel).

## III Ineffective Assistance of Counsel

 A defendant asserting that she was provided ineffective assistance of counsel has the burden of showing both that her "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *United States v. Hernandez,* 242 F.3d 110, 112 (2d Cir.2001) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

In addition to the errors in advice presented above, Couto alleges the following errors on behalf of her counsel: 1) that he failed to bring materials to her attention in a timely fashion; 2) that he failed to meet with her or discuss the case with her; and 3) that he retained funds to obtain an immigration attorney for consultation but failed to do so.

Following the hearing, it appears that in fact, Couto's prior counsel received the tapes and plea agreement sometime shortly after her arrest, probably in July, but did not provide the tape to Couto until

November and did not discuss the plea agreement with her until the day prior to the plea being entered.[2] It was also highly probable that Couto met with her counsel on only two occasions, the first when she was arraigned and bail was set and the second when they discussed the plea agreement. Finally, it is not disputed that the immigration attorney was not consulted until after the plea was taken. While her prior counsel's representation was perhaps not the best, it does not rise to the level of objective unreasonableness.

Defendant's prior counsel testified[3] that he had, in fact, been preparing a defense when he made the decision that he did not believe Defendant could testify. He stated that he discussed this with the defendant. He also stated that he did not see any way to win unless Couto could testify. While the parties did not discuss the specifics of this problem because they wished to retain the attorney client privilege on the issue, it is clear that these were tactical decisions that were made in the course of his representation of the defendant. Further, it appears that Couto's prior counsel had several conversations with Couto's friend who initially retained the counsel on behalf of Couto.[4] It was not made clear whether this was at Couto's request because her first language is Portugese, or if this was for some other reason.

Looking at all of the circumstances of the representation, the Court cannot find that defendant has met the high burden of proving her counsel's representation was objectively unreasonable. Consequently, the Court will not allow the plea to be withdrawn on that basis.

---

**2.** The plea was required to be entered on that day as it was the Friday prior to a Monday trial.

**3.** While much of Defendant's former counsel's testimony was contradicted by the documen-

tary evidence, on the issue of his preparation for the criminal trial, he testified credibly.

**4.** Couto's friend, though present in the courtroom, did not testify at the hearing.

## IV Other Factors

Although Defendant's claim regarding her counsel's advice is not sufficient on its own to render her plea involuntary, the Court examines the other factors as they apply to Defendant's application.[5]

### A. Time of Withdrawal

█ Where the plea is quickly withdrawn, it is more likely to indicate that the plea was entered in "haste and confusion." *Barker*, 514 F.2d at 222. In contrast, where there is significant delay, a more substantial reason must be given for the withdrawal. *Id.* at 222. Defendant appears to have sought withdrawal of her plea as soon as the immigration proceeding alerted her that she had no chance to remain in the United States and as soon as she obtained new counsel. Thus, there is no delay on Defendant's part in asserting this claim.

### B. Legal Innocence

█ Where a party is now asserting her legal innocence, the Court should consider the strength of the government case, whether the assertions of the defendant would make a legally effective defense, and the reason such a defense was not asserted earlier. *United States v. Barker*, 514 F.2d 208, 220 (D.C.Cir.1975)(discussing the meaning of "fair and just reason").

Defendant has quite often asserted that she did not believe she was doing anything wrong, and indeed, it appears that up to a point that is probably the case. Defendant points out that she hesitated and stammered when asked if she committed the acts alleged. She claims that at all times she did not have the requisite intent to commit the crime.

The government has submitted a video tape showing Defendant in a hotel room giving money to undercover officers posing as corrupt Immigration and Naturalization Services (INS)agents during the sting operation. The government also argues that any hesitation on the part of Defendant during the plea allocution occurred because of Defendant's concern that she had been charged with a drug crime in addition to the bribery, in fact, she had not.[6]

█ A defendant asserting innocence faces an uphill battle. *Fernandez–Antonia*, 2000 WL 1716436, at *3. Drawing all inferences in favor of the Government, as this Court must, the video tape could make out the elements of the crime for the government. Further, the government is likely to call the INS agents as witnesses, thus further solidifying their case against Defendant. While a lack of intent is a viable defense that could be asserted at trial, when drawing all inferences in favor of the government, it does not appear that this defense is viable in this case. The Court need not allow a withdrawal where such an action would be futile. *United States v. Corona–Roman*, 2001 WL 863421, *2 (S.D.N.Y. July 30, 2001).

## V Conclusion

For the foregoing reasons, Defendant's motion to withdraw her plea is denied.

**IT IS SO ORDERED**

---

5. Because the government does not assert any prejudice, nor does it appear that any would exist, the Court does not address this factor in detail.

6. As previously noted, Defendant was arrested as part of a larger sting operation. Many of the defendants in that operation were charged with bribing the INS officers with drugs. At no time was Defendant charged with being involved with the drug trade in the case.