UNITED STATES of America,
Appellee,

v.

Alberto J. RIERA, Defendant–
Appellant.

Docket No. 00–1815.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 22, 2001.

Decided: Aug. 01, 2002.

Ping C. Moy, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York; Jamie L. Kogan, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Colleen P. Cassidy, The Legal Aid Society, Federal Defender Division. Appeals Bureau, New York, NY, for Appellant.

Before CARDAMONE, WINTER, and SACK, Circuit Judges.

SACK, Circuit Judge.

The defendant-appellant Alberto J. Riera appeals from the December 19, 2000

judgment of the United States District Court for the Southern District of New York (Richard Owen, *Judge*) following his guilty plea to eleven counts of wire fraud in violation of 18 U.S.C. § 1343 and sentencing him principally to concurrent terms of sixty months' imprisonment on each count. Riera contends (1) that he must be resentenced because the district court's four-level upward departure pursuant to § 5K2.0 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines")[1] was based on impermissible grounds; and (2) that he is entitled to have resentencing conducted before a different district court judge because the government breached the plea agreement by advocating before the sentencing judge for an upward departure. In response to Riera's first argument, the government concedes that "the record as currently constituted is insufficient to support the vertical departure imposed," but argues that such a departure might be permissible in this case if the departure were based on appropriate findings by the district court. Gov't Br. at 31, 33. We need not decide whether an upward departure can be justified on the facts of this case because we hold that the district court's reliance upon impermissible factors necessitates resentencing. Riera's second argument, that the government breached the plea agreement, presents a closer question. Although we do not condone the government's behavior in this regard, we conclude that it did not breach the plea agreement. We therefore remand the case to the district court and decline to disqualify Judge Owen from presiding on remand.

## BACKGROUND

On February 9, 2000, Riera was indicted on eleven counts of wire fraud in violation of 18 U.S.C. § 1343. Pursuant to a written agreement, Riera pleaded guilty on June 19, 2000 to all eleven counts, admitting that he embezzled approximately $541,000 from his employer Mega Communications, Inc. As part of that agreement, he admitted committing relevant conduct not charged in the indictment, namely, the theft and embezzlement of $365,000 from his former employer, Spanish Broadcasting System. In exchange, the government agreed not to prosecute him further for that conduct. The parties stipulated that Riera's adjusted offense level was sixteen and his criminal history category II, yielding a sentencing range of twenty-four to thirty months. The adjusted offense level was arrived at by employing a base offense level of six, adding eleven levels to account for the $906,000 loss amount and two levels because the offense involved more than minimal planning, and then subtracting three levels in light of Riera's acceptance of responsibility. With one exception not relevant to this appeal, the parties also promised not to suggest to the district court or Probation Department a departure in either direction from this Guideline range. The plea agreement stated, however, that if the court contemplated an adjustment, then "the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same." Plea Agreement at 4. The parties further agreed that in the event that Riera committed another crime after signing the plea agreement, the government could seek denial of the three-level adjustment for acceptance of responsibility.

After pleading guilty and while free on bail, Riera was arrested for submitting false timesheets to his new employer. In

---

1. All citations to the United States Sentencing Guidelines Manual refer to the edition effective November 1, 2000, which, the parties do not dispute, applies to the defendant's sentence.

exchange for his allocution to this additional fraud offense, the government orally agreed in open court to recommend that the court deny him only two of the three acceptance of responsibility points. The other terms of the written agreement remained binding.

On October 27, 2000, the court accepted this new plea agreement and gave notice to the parties that it was considering an upward departure based on Riera's "conduct and state of mind," Hr'g Tr., Oct. 27, 2000, at 21. As discussed further in Part II of the "Discussion" section below, the parties dispute whether the court solicited the government's opinion on the propriety of an upward departure. In any event, on December 7, 2000, the government submitted a letter to the court detailing the reasons why an upward departure "would be well within [the court's] discretion," Gov't Letter of Dec. 7, 2000, at 1. Subsequently, by letter and in open court, the government repeatedly stated that its December 7 letter merely responded to the court's inquiry and that it was not the government's intent to advocate or recommend an upward departure.

At the December 19, 2000 sentencing hearing, the district court heard argument on Riera's contention that the government breached its plea agreement by arguing for an upward departure in its December 7 letter. The court held that the government did not breach the plea agreement because the government's letter was written in response to the court's specific inquiry and did not advocate a departure but merely informed the court that an upward departure would be within its discretion.

The court then sentenced Riera principally to the statutory maximum: eleven concurrent sentences of sixty months' imprisonment. With the avowed aim of imposing the statutory maximum in a matter consistent with the Guidelines, the court arrived at the sentence by first denying Riera all three acceptance of responsibility points. The court then increased Riera's offense level four additional levels by upwardly departing on the Guidelines Sentencing Table four levels pursuant to U.S.S.G. § 5K2.0, which permits departures for an "aggravating ... circumstance of a kind, or to a degree, not adequately taken into consideration" by the Guidelines. (Citation and internal quotation marks omitted.) The court explained that a § 5K2.0 upward departure was justified because of the large amount of money Riera stole, the relatively small punishment imposed for his prior crimes, the fact that he committed another crime while free on bail, the likelihood that he would commit future crimes, and more generally his "state of mind," Hr'g Tr., Dec. 19, 2000, at 15. The upward departure resulted in an offense level of twenty-three, requiring a sentence under the Guidelines of fifty-one to sixty-three months. The court expressly stated that it was not departing horizontally across the sentencing table by increasing Riera's criminal history category under U.S.S.G. § 4A1.3.

This appeal followed.

## DISCUSSION

Riera contends that the district court abused its discretion by departing upwardly pursuant to U.S.S.G. § 5K2.0 and that resentencing must proceed before a different district court judge because the government breached the plea agreement by advocating before the sentencing judge for a departure. We agree (as does the government) that, at least on the current record, the district court's § 5K2.0 departure was an abuse of discretion, but we reject Riera's argument that the government breached the plea agreement. We therefore vacate Riera's sentence and remand

for resentencing before the original district court judge, Judge Owen.

## I.  U.S.S.G. § 5K2.0 Vertical Departure

### A.  Standard of Review

■■■ We review the district court's decision to depart from the applicable Guideline range for abuse of discretion. *United States v. Malpeso*, 115 F.3d 155, 169 (2d Cir.1997) (citing *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)), *cert. denied*, 524 U.S. 951, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998).  In so doing, we apply a three-part test:

> First, we determine whether the reasons articulated by the district court for the departure are of a kind or a degree that may be appropriately relied upon to justify the departure.  Second, we examine whether the findings of fact supporting the district court's reasoning are clearly erroneous.  Finally, we review the departure for reasonableness, giving considerable deference to the district court.

*United States v. Khalil*, 214 F.3d 111, 124 (2d Cir.) (internal citations and quotation marks omitted), *cert. denied sub nom. Abu Mezer v. United States*, 531 U.S. 937, 121 S.Ct. 326, 148 L.Ed.2d 262 (2000). The first part of this test, which is the only one at issue in this appeal, is conducted *de novo*.  *See Malpeso*, 115 F.3d at 169.

### B.  Analysis

Before departing pursuant to § 5K2.0, the district court must find " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration' " by the Guidelines.  U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). The district court departed upwardly pursuant to § 5K2.0 because it considered the otherwise applicable Guideline range to be "astonishingly

low" in light of the fact that Riera embezzled nearly $1 million in connection with the current offense, defrauded his employer while free on bail, and committed many prior fraud crimes for which he received only "a slap on the wrist."  Hr'g Tr., Dec. 19, 2000, at 22.  These actions demonstrated to the district court "a state of mind that is being utterly unaddressed by these [G]uidelines." *Id.* at 15.  The court expressed the fear that if Riera received yet another light sentence, he would be very likely to engage in criminal activity after his release from prison.

A district court may not depart from the applicable Guideline range, as the district court did here, because of its "dissatisfaction with the available sentencing range." U.S.S.G. § 5K2.0, cmt.  A court may only depart vertically pursuant to § 5K2.0 if it "finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' "  U.S.S.G. § 5K2.0, policy statement (quoting 18 U.S.C. § 3553(b)).  The court made no such finding.

■■■ A § 5K2.0 vertical departure, moreover, is permissible only to account for misconduct " 'relate[d] in some way to the offense of conviction.' "  *Khalil*, 214 F.3d at 123 (quoting *United States v. Tropiano*, 50 F.3d 157, 164 (2d Cir.1995)) (alteration in *Khalil*); *accord Malpeso*, 115 F.3d at 169.  The court's concern here was with conduct at least some of which was not related to the offense of conviction.

■■■ While a horizontal departure pursuant to U.S.S.G. § 4A1.3 may well be a permissible means to account for such prior conduct, a § 5K2.0 departure based on recidivism concerns is allowed only "if the court makes findings distinguishing the defendant from the typical recidivist." *Khal-*

*il*, 214 F.3d at 124 (citations omitted); *accord United States v. Stevens*, 192 F.3d 263, 267 (2d Cir.1999). Again, the district court made no such finding.

█ In sum, we agree with the government that because the district court focused primarily on Riera's criminal history and likelihood to commit future crimes, the § 5K2.0 departure was an abuse of discretion. *See United States v. Tropiano*, 50 F.3d 157, 163–65 (2d Cir.1995) (vacating sentence because concerns for recidivism motivated the court's decision to depart under § 5K2.0); *United States v. Deutsch*, 987 F.2d 878, 887 (2d Cir.1993) (remanding for resentencing because "past criminal conduct and likelihood of recidivism" were the basis for the § 5K2.0 departure). The district court's concern about the amount of money embezzled also cannot justify a departure because the loss amount was taken into account when Riera's Guideline sentence was calculated. *See* U.S.S.G. § 2F1.1(b)(1)(L) (mandating an eleven-level upward adjustment if the loss amount is more than $800,000 but less than or equal to $1,500,000). "Because the district court's articulated reasons for departure are inadequate," we vacate Riera's sentence and remand for resentencing. *See Stevens*, 192 F.3d at 264.

We decline to decide whether, on remand, a § 5K2.0 departure may nevertheless be warranted on the facts of this case or whether a § 4A1.3 departure could be justified. We note, however, that § 5K2.0 departures based on recidivism concerns or the defendant's character are rarely permissible. *See United States v. Merritt*, 988 F.2d 1298, 1306–11 (2d Cir.) (affirming a § 5K2.0 departure based in part on the defendant's "conduct and character" only after carefully determining that no provision of the Guidelines adequately accounted for "the defendant's continuing dishonesty and greed, and his

cynical determination to profit from his crime after service of his jail time"), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993). Finally, we observe that if the district court, on remand, decides instead to depart horizontally pursuant to § 4A1.3, it must explain why the otherwise applicable " 'criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes.' " *Khalil*, 214 F.3d at 123 (quoting § 4A1.3, policy statement); *see also id.* at 124 (noting the "step-by-step framework required for a departure pursuant to § 4A1.3").

## II. Breach of the Plea Agreement

### A. *Standard of Review*

█ We review interpretations of plea agreements *de novo* and in accordance with principles of contract law. *United States v. Padilla*, 186 F.3d 136, 139 (2d Cir.1999). To determine whether a plea agreement has been breached, we "look[ ] to the reasonable understanding of the parties as to the terms of the agreement." *United States v. Colon*, 220 F.3d 48, 51 (2d Cir.2000). Because the government " 'ordinarily has certain awesome advantages in bargaining power,' " any ambiguities in the agreement must be resolved in favor of the defendant. *Padilla*, 186 F.3d at 140 (quoting *United States v. Ready*, 82 F.3d 551, 558–59 (2d Cir.1996)).

### B. *Analysis*

In the written plea agreement, both parties agreed that "neither a downward nor an upward departure from the Guidelines range set forth above is warranted," that "neither party will seek such a departure," and that neither party will "suggest that the Court *sua sponte* consider such a de-

parture." [2]   Plea Agreement at 3. The agreement also provided:

> In the event that the Probation Department or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to [in the agreement], the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

*Id.* at 4.

Riera asserts that the government breached its obligation under the plea agreement not to suggest an upward departure when it wrote, on December 7, 2000, that the court " 'would be well within its discretion in upwardly departing' " and then detailed the reasons why such a departure would be appropriate.  Appellant's Br. at 33 (quoting Gov't Letter of December 7, 2000, at 1).  To cure this alleged breach of the plea agreement, Riera requests resentencing before a district court judge who has not read the government's December 7 letter.  Riera argues with some force that once the government engaged in prohibited advocacy to the court, the effects of that advocacy on the judge who heard it could not be ameliorated—the government-rung bell cannot be unrung—and that that particular judge is therefore, for these purposes, in effect tainted.  The government contends that it did not advocate for an upward departure but, as expressly provided for in the agreement, responded to the court's inquiry with respect to whether a departure would be permissible by "merely set[ting] forth the relevant facts and law."  Gov't Br. at 22.

■  While the government's December 7 letter was too close in tone and substance to forbidden advocacy to have been well-advised, we nonetheless hold that the government did not breach the plea agreement.  We do so because (1) the government's December 7 letter was in response to a specific inquiry from the court; (2) the plea agreement provided that the government could respond to the court's inquiries by stating whether a departure would be within the court's discretion; and, importantly, (3) the government later repeatedly emphasized that it was not advocating an upward departure.

*1.  The court's inquiry.*  Both parties agree that the government's December 7 letter would have constituted a breach of the plea agreement had the court not first asked for the government's view on the propriety of an upward departure.  Riera argues that the court did not make that inquiry independently;  instead, he asserts that the government "asked for permission to submit papers and volunteered its argument for a[n] [upward] departure."  Appellant's Br. at 35.  We disagree.

During the October 27, 2000 plea hearing, the district court gave Riera notice that it was considering an upward departure and asked how long he would need to brief the matter.  When Riera's counsel requested four weeks, the court asked the prosecutor whether he had "[a]ny problem with that."  Hr'g Tr., Oct. 27, 2000, at 22.  It is unclear whether the court was asking (1) whether the prosecutor would be available for a hearing in four weeks, or (2) whether four weeks provided the prosecutor with sufficient time to brief whether an upward departure was permissible.  At a later hearing, however, the district court repeatedly emphasized that it had request-

---

**2.**  The agreement, however, preserved Riera's right to seek a downward departure based on extraordinary family circumstances and the government's right to oppose a motion for that departure.  The government's opposition to Riera's motion and the district court's decision to deny the downward departure are not at issue on appeal.

ed the government's opinion on the propriety of a departure. *See* Hr'g Tr., Dec. 19, 2000 at 3–4 ("I did ask that the government respond to my inquiry . . . of whether I had the right to go up . . . ."); *id.* at 5 ("I did ask for input."); *id.* at 6 ("The record should be absolutely clear that the suggestion for departure came from me. . . . No one even said boo about that until I expressed some absolute astonishment at what the level was, right?"); *id.* at 11 ("I was the one who raised it and the government merely responded. . . ."). Because the district court judge was present at the October 27 hearing and in the best position to know what he requested, we conclude that the government submitted the December 7 letter in response to the court's inquiry.

*2. What the plea agreement permitted.* As we understand it, the plea agreement allowed the government to respond to inquiries from the district court by setting forth relevant facts and advising the court whether it would be in conformance with the law—that is, whether it would be within its discretion—for the court to depart from the Guideline sentence. But because the government stipulated that a departure was not "warranted," Plea Agreement at 3, the government was forbidden from advocating a departure even if the court asked for its recommendation. This is consistent with the government's promise not to "suggest" a departure, *id.,* because the government was only allowed to comment on the legality of a departure *if* the court first *sua sponte* suggested a departure. *Cf. Colon,* 220 F.3d at 51–52 (2d Cir.2000) (interpreting a plea agreement identical in all relevant aspects to the one at issue here and finding that it was "not ambiguous"). This construction of the plea agreement is supported by defense counsel's own comments during the sentencing proceedings: Riera's attorney conceded that "if all the [December 7] letter

said was this is the law and you have discretion and stopped there, that would certainly not be a violation of the plea agreement." Hr'g Tr., Dec. 19, 2000, at 5.

This interpretation of Riera's plea agreement is also consistent with our construction of a similar agreement in *United States v. Goodman,* 165 F.3d 169 (2d Cir.), *cert. denied* 528 U.S. 874, 120 S.Ct. 318, 145 L.Ed.2d 150 (1999). There, the government had agreed not to " 'argue' " that an adjustment to the stipulated Guideline sentence was " 'appropriate.' " 165 F.3d at 173 (quoting plea agreement). We agreed with the district court that these promises did not forbid the government from responding to a specific request of the court by "supply[ing] the Court with the law and the facts," *id.* at 172, and stating that the court *"could"* legally make an upward adjustment to the stipulated sentence, as long as the government "did not advocate that [an adjustment] should be imposed," *id.* at 173 (emphasis in original; internal quotation marks omitted). The government's right to respond to the court's inquiries with the relevant facts and law is clearer in the case before us than in *Goodman* because the agreement in *Goodman* did not explicitly provide that the government was permitted to answer inquiries from the court as does the agreement at issue here.

*3. The December 7 letter and subsequent events.* The critical question, then, is whether the government advocated a departure in violation of the plea agreement. We think the government's December 7 letter came very close to breaching the agreement. Although the letter related the law in light of the facts of the case, which the government was permitted to do under the plea agreement, it also contained a few ill-advised descriptive words that might have suggested that the government thought that the court *should* up-

wardly depart. But the December 7 letter did not explicitly advocate a departure. And, to clear up any confusion as to any possible implicit message of advocacy in the letter, the government soon thereafter and repeatedly told the district court that it had not intended to advocate and was not advocating a departure.[3] *See* Gov't Letter of Dec. 15, 2000, at 2 ("By its December 7 letter, the Government was simply responding to the Court's inquiry. The Government did not intend to advocate an upward departure in this matter, and does not advocate for an upward departure."); Hr'g Tr., Dec. 19, 2000, at 6 ("[T]o the extent that there might have been some confusion[,] [as to the government's position caused by the December 7 letter], the December 15th letter is absolutely clear that the government is not advocating[,] urging[, or] recommending [a] departure ....."); *id.* at 7 ("[A departure] is within your discretion as we said, but absolutely, your Honor, we've made an agreement, we're going to abide by our agreement and we're not urging the Court to do otherwise.").

For these reasons, we conclude that the government did not breach the plea agreement.[4]

## CONCLUSION

Because the district court relied upon impermissible factors when departing from the Guideline range, we vacate Riera's sentence and remand for resentencing consistent with this opinion.

---

**3.** The defendant's reliance on *United States v. Lawlor,* 168 F.3d 633 (2d Cir.1999), is therefore misplaced. In *Lawlor,* we held that the government breached its plea agreement by concurring with a presentence report that suggested a higher sentence, even though the court asked for the government's position on the presentence report. *Id.* at 637. We stated that by doing so the government "implicitly agreed" with an enhancement of the defendant's sentence. *Id.* The instant case is distinguishable, however, because the government in *Lawlor* failed to make it clear to the court that it was not advocating a departure and because the plea agreement in *Lawlor* did not explicitly allow the government to respond to court inquiries.

**4.** Whether the government's future repetition of its behavior here, including its use of protestations that previous inappropriate comments were not advocacy, would result in a similar conclusion on our part as to its propriety under a similar plea agreement despite the observations contained in this opinion is a question that we obviously need not and therefore do not address at this time.