10-5006-cr (L)
United States v. Sehgal

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of May, two thousand twelve.

PRESENT: GUIDO CALABRESI,
REENA RAGGI,
DENNY CHIN,
*Circuit Judges*.

---------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                  Nos. 10-5006-cr (L);
                                                         11-3468-cr (Con)

SHASHIBALA SEHGAL, a.k.a. Shashi Sehgal, a.k.a. Shashibala Jaitley, ARTI A. JAITLY, a.k.a. Angela Jaitly,
*Defendants-Appellants*,

SUNIL C. JAITLY, RUPAL JAITLY,
*Defendants*.*

---------------------------------------------------------------------

APPEARING FOR APPELLANTS:     JOHN S. WALLENSTEIN, Esq., Garden City, New York, *for* Shashibala Sehgal.

Kevin T. Mulhearn, Esq., Orangeburg, New York, *for* Arti A. Jaitly.

---

* The Clerk of Court is directed to amend the official caption as shown above.

APPEARING FOR APPELLEE: CHRISTOPHER A. OTT (David C. James, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Central Islip, New York.

Consolidated appeals from judgments of the United States District Court for the Eastern District of New York (Sandra J. Feuerstein, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of conviction entered on December 3, 2010, and July 27, 2011, are AFFIRMED.

Co-defendants Shashibala Sehgal and Arti A. Jaitly challenge their convictions for tax crimes committed pursuant to a scheme to conceal millions of dollars of income from the Internal Revenue Service. Sehgal was convicted after trial of conspiracy to commit tax fraud, see 18 U.S.C. § 371, and sentenced to 51 months' imprisonment, three years' supervised release, $1,587,882 restitution, and a $100 special assessment. Jaitly was convicted on a guilty plea of failing to file a tax return, see 26 U.S.C. § 7203, and sentenced to two months' incarceration (which she has now served), one year of supervised release, $4,999 restitution, and a $25 special assessment. Sehgal argues for reversal on the grounds that she was (1) denied a fair trial by various trial management decisions; (2) denied effective assistance of counsel as guaranteed by the Sixth Amendment; and (3) convicted on the basis of insufficient evidence in violation of due process. Jaitly argues for resentencing on the grounds that the government's submissions and arguments at sentencing (1) breached her plea agreement, and (2) biased the district judge. We assume the parties' familiarity with the

2

facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm both convictions.

1.    Sehgal

    a.    Trial Management Challenges

        (1)    Continuance

Sehgal argues that the district court's refusal to grant her a continuance to retain new counsel deprived her of a fair trial. The argument is without merit.

Trial courts enjoy "largely unfettered" discretion in granting or denying trial continuances. Sanusi v. Gonzales, 445 F.3d 193, 199 (2d Cir. 2006) (citing Morris v. Slappy, 461 U.S. 1, 11 (1983)). While we are generally disinclined to second-guess the exercise of such discretion, we are particularly reluctant to do so when a continuance is sought on the eve of trial purportedly to secure new counsel. See, e.g., United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997); United States v. Llanes, 374 F.2d 712, 717 (2d Cir. 1967). Here, Sehgal failed to show the "unusual circumstances" required to warrant such a last-minute continuance. United States v. Schmidt, 105 F.3d at 89.

Sehgal's contention that she sought a continuance on November 3, 2008, two days before trial, is belied by the record, which shows her asking only for Michael Kushner, the attorney who had handled her case but who was recently terminated from the firm that was counsel of record, to continue to represent her. The district court not only agreed to Kushner's continued representation of Sehgal, but also resolved various disputes, including financial ones, that might have impeded such representation. Insofar as Sehgal sought a

3

continuance on November 5, 2008, the first day of trial, to allow a newly retained attorney to replace Kushner, we identify no abuse of discretion in the district court's denial, particularly in light of the fact that new counsel was not then present in court and Kushner twice stated on the record that he was ready to proceed with trial.

(2)     Scheduling Witnesses

Equally meritless is Sehgal's claim that the district court denied her a fair trial by rushing the proceedings, specifically, by requiring cooperating confederate Rupal Jaitly to testify on the afternoon of the second day of trial rather than adjourning early so that this witness would begin to testify the following day. A district court enjoys broad discretion in managing a trial by controlling "the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a). It does not abuse that discretion by requiring parties to present evidence throughout the full trial day in order not to waste jury time. Further, Sehgal cannot demonstrate that this basic trial management decision prejudiced her because the district court allowed defense counsel's cross-examination of Rupal Jaitly to extend into the following day.

b.     Sixth Amendment Claims

Sehgal contends that counsel's inexperience and lack of preparation prevented him from providing her with the effective assistance guaranteed by the Sixth Amendment. Further, she contends that her own mid-trial remand interfered with her right to consult with counsel, particularly as to whether she should testify in her own defense. We decline to review the first claim on direct appeal, leaving Sehgal to pursue it through the preferable

4

course of a motion under 28 U.S.C. § 2255. See Massaro v. United States, 538 U.S. 500, 504–05 (2003); accord United States v. Cain, 671 F.3d 271, 298–99 (2d Cir. 2012).

As for her second claim, we deem it forfeited, and thus, reviewable only for plain error, in light of the fact that defense counsel sought and received additional time to consult with Sehgal after her remand without objecting that the time afforded was insufficient effectively to advise defendant as to her options. See United States v. Garcia, 587 F.3d 509, 515 n.2 (2d Cir. 2009) (noting that errors forfeited because of defendant's failure timely to assert rights are subject to review for plain error).

We identify no error, much less plain error, in the district court's detention order because Sehgal cannot show that her right to consult was impaired by the detention order. Although the Supreme Court and this court have cautioned that trial judges generally should not restrict a defendant's ability to communicate with counsel during trial "absent an important need to protect a countervailing interest," Morgan v. Bennett, 204 F.3d 360, 367 (2d Cir. 2000) (relying on, inter alia, Geders v. United States, 425 U.S. 80 (1976)), Morgan and Geders, on which Sehgal relies, are inapposite. Both cases concerned challenges to a trial judge's order specifically precluding a defendant from consulting with defense counsel, in Geders as to any issue, see Geders v. United States, 425 U.S. at 82, and in Morgan, as to the possibility that a prosecution witness would testify, see Morgan v. Bennett, 204 F.3d at 363. Here, the district court imposed no such limitation on Sehgal and, in fact, granted her request for additional time to consult with counsel regarding her decision to testify. Accordingly, Sehgal's claim fails on the merits.

5

In urging otherwise, Sehgal relies on Bitter v. United States, 389 U.S. 15 (1967). There, the Supreme Court held that the mid-trial remand of a defendant, after "a single, brief incident of tardiness" to a "jail 40 miles distant from the courtroom" and "without hearing or statement of reasons, had the appearance and effect of punishment rather than of an order designed solely to facilitate the trial," and constituted an "unwarranted burden upon defendant and his counsel in the conduct of the case." Id. at 17.

That is not this case. The district court remanded Sehgal only after receiving evidence cumulatively demonstrating her total disregard for the district court's authority. That evidence included two occasions on which Sehgal arrived late for trial, the second time an hour after she was due to arrive and only a day after the district court had warned her that she must arrive on time; cooperating witness Rupal Jaitly's testimony that, even after being charged in this case, Sehgal was continuing to conceal her income from authorities; Sehgal's admission that she had taken no steps to end the charged concealment scheme; Sehgal's admission that she had yet to file any income tax returns three years after having been indicted, in part, for her failure to do so; and, finally, Sehgal's concoction of an elaborate lie in response to the district court's inquiry as to her acquisition of a cell phone. As the district court correctly observed, this record of continuing criminal conduct and pervasive deceit cast doubt on the likelihood that Sehgal would abide by the conditions of her release. See United States v. LaFontaine, 210 F.3d 125, 135 n.6 (2d Cir. 2000) (observing that revocation of release may be justified where defendant perjures himself, thus indicating that defendant is unlikely to abide by court imposed conditions of release). Accordingly, the district court's

6

decision to remand Sehgal in order to ensure her presence at trial was not punitive in either appearance or effect. Any question regarding whether Sehgal's detention during trial satisfied the statutory requirements of 18 U.S.C. §§ 3142 and 3148 is rendered moot by the fact that, as a consequence of her conviction and sentence, all pre-judgment incarceration will be credited against her 51-month prison term.[1]

    c.      <u>Sufficiency of the Evidence</u>

Sehgal argues that the trial evidence was sufficient only to prove that she entrusted her charged confederates with the revenue from her medical practice, not that she knew that they would fail to file income tax returns on her behalf. We review <u>de novo</u> the sufficiency of the evidence to support conviction, but in doing so, we must consider the evidence in the light most favorable to the prosecution and uphold the conviction so long as any reasonable jury could have returned the challenged verdict on that evidence. <u>See</u> <u>United States v. O'Connor</u>, 650 F.3d 839, 855 (2d Cir. 2011); <u>United States v. Abu-Jihaad</u>, 630 F.3d 102, 134 (2d Cir. 2010). Applying those principles here, we reject Sehgal's sufficiency challenge as meritless.

The charged conspiracy did not require the government to prove Sehgal's knowledge that her confederates would fail to file tax returns. Rather, it required proof that she had agreed with co-conspirators to conceal revenue from the Internal Revenue Service. The trial

---

[1] Any question regarding whether Sehgal's detention during trial satisfied the statutory requirements of 18 U.S.C. §§ 3142 and 3148 is rendered moot by the fact that, as a consequence of her conviction and sentence, all pre-judgment incarceration will be credited against her 51-month prison term.

7

evidence easily permitted a rational jury to find that Sehgal knowingly entered into such a scheme intending it to succeed. Documentary and testimonial evidence showed that Sehgal arranged for millions of dollars in revenue from her medical practice to be paid not to her but into bank accounts held by shell corporations controlled by her co-conspirators. Those shell companies then paid Sehgal's business and personal expenses and provided Sehgal with a weekly cash allowance of thousands of dollars. These machinations were sufficient, by themselves, to permit a rational jury to find that Sehgal was a knowing participant in a scheme to conceal her income. The conclusion was only reinforced by evidence that on various credit applications filed during the conspiracy, Sehgal acknowledged an annual income of at least $500,000, and yet, neither she nor her co-conspirators ever filed any tax returns during the conspiracy's 15-year existence, much less paid any taxes on the concealed revenue. Indeed, Sehgal's awareness that no tax returns were being filed with respect to the revenue she had thus managed to conceal finds support in the testimony of tax preparer Henry Umujane, whom Sehgal consulted in 1996, i.e., during the conspiracy, about her need to have a tax return prepared as soon as possible for use in a family court proceeding in which she was then involved. In fact, even that return was never filed.

In sum, the record evidence is sufficient to support Sehgal's conviction.

2.    Jaitly

    a.    Plea Agreement

Jaitly argues that the government breached the parties' plea agreement by "ascribing to [Jaitly] complicity and participation in the overarching alleged . . . conspiracy from 2001

8

to 2005," and by "taking a position as to where within the Guidelines range" the district court should sentence her. Jaitly Br. at 21. The district court itself rejected this argument both at sentencing and again in denying Jaitly's motion for bail pending appeal. On appeal, we are nevertheless obliged to construe the plea agreement de novo, applying contract law principles and looking to "the reasonable understanding of the parties as to the terms of the agreement." United States v. Riera, 298 F.3d 128, 133 (2d Cir. 2002) (internal quotation marks omitted).

Insofar as Jaitly faults the government for advising the district court that, in making a sentencing decision, it could consider defendant's failure to report income obtained from the fraud conspiracy underlying the failure to file crime of conviction, the argument fails because the plea agreement specifically states that the government would "advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant." Plea Agreement at 2, United States v. Jaitly, No. 05-cr-00688 (SJF) (E.D.N.Y. Oct. 30, 2008).[2]

---

[2] The same plea agreement provision compels us to reject Jaitly's unpreserved claim, argued in an entirely separate section of her brief, that the government breached the plea agreement at sentencing by advocating for a calculation of tax loss that attributed to her the loss caused by her participation in the broader tax fraud scheme underlying her failure-to-file crime. See Puckett v. United States, 556 U.S. 129, 143 (2009) (holding that plain error review applies to breach of plea agreement not objected to in district court). This claim, in fact, fails for another reason: it is factually inaccurate. At sentencing, the government cited the Probation Department's higher tax-loss figure not to advocate for it, but in response to the district court's request for an explanation as to the PSR's recommended Guidelines calculation. As at the Fatico hearing, the government provided evidence underlying the Probation Department's calculation without advocating that the district court adopt it.

Nor are we persuaded that the government breached the plea agreement in stating that a sentence of "no penalty and restitution" would be insufficient to achieve the sentencing goal of deterrence. Jaitly Sentencing Tr. at 14:11–12. Jaitly maintains that the government's reference to the need for a "penalty" constituted advocacy for a term of incarceration, which violated its plea agreement promise to "take no position where within the Guidelines range determined by the Court"—in this case, zero to six months—"the sentence should fall." Plea Agreement at 4. For the same reasons as the district court, we reject this argument.

The record makes plain that the government's comments were in response to Jaitly's request for a non-Guidelines sentence of restitution without more. Although Jaitly's argument for a sentence without a term of imprisonment, probation, or supervised release was consistent with her Guidelines range, see U.S.S.G. §§ 2T4.1(B), Ch. 5 Pt. A (Sentencing Table), her request for a sentence of restitution without more was inconsistent with the Guidelines' fine recommendation, see id. § 5E1.2. While the plea agreement precluded the government from advocating for any particular sentence within or above the Guidelines range, no term in the agreement prevented the government from advocating for a Guidelines sentence generally, as opposed to one below the Guidelines. Thus, Jaitly's reliance on United States v. Corsentino, 685 F.2d 48 (2d Cir. 1982), is misplaced, because there the plea agreement obligated the government to "take no position" whatsoever at sentencing, id. at 52. The government having been under no such limitation here, we identify no merit in Jaitly's breach claim.

b. Judicial Bias

Jaitly contends that the government's "baseless" efforts to prove that she had engaged in post-guilty plea misconduct and was responsible for a significantly higher tax loss "poisoned" the district court's "ability to render an appropriate sentence . . . in a fair and impartial manner." Jaitly Br. at 14. The district court rejected this argument in denying Jaitly's motion for recusal, noting that it had, in fact, ruled for Jaitly on the matters in dispute. We review the denial of a motion for recusal only for abuse of discretion, and we identify none here. See United States v. Giordano, 442 F.3d 30, 48 (2d Cir. 2006).

Jaitly's argument that the government's submissions required recusal under 28 U.S.C. § 455(b)(1) fails because "knowledge acquired by the judge while he performs judicial duties does not constitute" the personal knowledge referenced in § 455(b)(1). United States v. Carlton, 534 F.3d 97, 101 (2d Cir. 2008) (internal quotation marks and brackets omitted). Nor do the district court's "comments and rulings in the context of the record as a whole" indicate any basis for questioning the district court's impartiality. United States v. English, 629 F.3d 311, 321 (2d Cir. 2011); see 28 U.S.C. § 455(a). In urging otherwise, Jaitly points to the district court's statements, at the start of the Fatico hearing, that it intended to sentence Jaitly to some term of imprisonment. But the district court went on to explain that this was its preliminary view of facts relevant to sentencing not dependent on the outcome of the Fatico hearing. It nevertheless indicated that it would be receptive to any argument Jaitly advanced for a non-incarceratory sentence. Accordingly, we identify no appearance of

11

partiality in the district court's comments or rulings and, therefore, no error in its denial of Jaitly's recusal motion.

      c.      <u>Other Issues</u>

Insofar as Jaitly also challenges the district court's order denying her release pending appeal, the matter has already been decided against her. <u>See</u> Order, <u>United States v. Jaitly</u>, No. 11-3468-cr (2d Cir. Sept. 20, 2011), ECF No. 42. Further, Jaitly's request that we assign the case to a different district judge on remand is moot, as we identify no error requiring remand.

3.     <u>Conclusion</u>

We have considered Sehgal's and Jaitly's remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment pertaining to each defendant is AFFIRMED.

                 FOR THE COURT:
                 CATHERINE O'HAGAN WOLFE, Clerk of Court