17-1800
United States v. Foreste

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of September, two thousand eighteen.

PRESENT:
         JOHN M. WALKER, JR.,
         DENNIS JACOBS,
         ROSEMARY S. POOLER,
              Circuit Judges.
_____

UNITED STATES OF AMERICA,

     Appellee,

     -v.-                                    17-1800

MICHAEL J. FORESTE, AKA BEAST,

     Defendant-Appellant.
_____

FOR DEFENDANT-APPELLANT:    Peter F. Langrock, Langrock
                            Sperry & Wool, LLP, Middlebury,
                            VT.

FOR APPELLEE:               Gregory L. Waples (with Eugenia
                            A.P. Cowles, on the brief),
                            Assistant United States
                            Attorneys, for Christina E.
                            Nolan, United States Attorney
                            for the District of Vermont,
                            Burlington, VT.

Appeal from a judgment of the United States District Court for the District of Vermont (Sessions, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Michael J. Foreste appeals from a judgment of conviction entered against him by the United States District Court for the District of Vermont (Sessions, J.). On October 13, 2016, a jury convicted Foreste on one count of conspiring to distribute oxycodone in violation of 21 U.S.C. § 846; seven counts of distribution of oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Foreste was sentenced on May 22, 2017 to 110 months' imprisonment and three-years' supervised release. He challenges the sufficiency of the evidence supporting each count of conviction. He also argues that the Government violated a May 2013 plea agreement by charging him with conspiracy. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

1.    We review a sufficiency challenge de novo. United States v. Sabhnani, 599 F.3d 215, 241 (2d Cir. 2010).

A criminal conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We "review all of the evidence

2

presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted).

We conclude that the jury was presented with sufficient evidence from which it could have rationally found that Foreste was a member of a drug distribution conspiracy and committed the substantive counts of drug distribution and money laundering.

As to the conspiracy to distribute oxycodone, Foreste argues that his only participation was as a buyer/seller.

The "typical buy-sell scenario" involves "a casual sale of small quantities of drugs," which, without more, cannot establish a conspiracy to distribute because there is no separate criminal object. United States v. Medina, 944 F.2d 60, 65 (2d Cir. 1991). However, where "there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use," then "the participants in the transaction may be presumed to know that they are part of a broader conspiracy." Id. at 65–66. Additional circumstances that support an inference of conspiracy include "prolonged cooperation between the parties, a level of mutual trust, standardized dealings, [and] sales on credit." United States v. Hawkins, 547 F.3d 66, 71 (2d Cir. 2008) (internal quotation marks).

The Government presented sufficient evidence from which a rational juror could have found that Foreste participated in the conspiracy, and not merely as a buyer/seller. Foreste purchased oxycodone pills from his supplier, Andre Clarke, on a monthly basis over the period 2008 through 2014, and in wholesale quantities typically between 150 and 240 pills.  Foreste then sold these pills to his own customers in Vermont, in quantities typically ranging from 30 to 100 pills.  At least one of Foreste's customers re-sold the drugs bought from Foreste.  Foreste sometimes

purchased the pills from Clarke on credit and also sold pills to his own customers on credit. This is sufficient evidence from which the jury could reasonably have found that Foreste was not merely a buyer/seller but knowingly participated in a conspiracy to distribute oxycodone in Vermont.

As to the substantive counts of drug distribution, Foreste argues that there is insufficient evidence to sustain the jury's finding that he distributed drugs on the specific dates identified in each of the counts of conviction.[1] Foreste cites testimony by his girlfriend, Suten Outar, that Foreste sometimes sent packages to his customers in Vermont that did not contain any oxycodone pills. Foreste argues that there was therefore insufficient evidence from which the jury could reasonably have found beyond a reasonable doubt that the packages sent on the dates for which he was indicted for distribution actually contained oxycodone.

Seven packages were sent on or near the dates alleged in the indictment. Outar testified that the label on each was in her handwriting or in Foreste's. All seven packages were sent via Express Mail, and Outar testified that Foreste used regular mail for the decoy packages that contained no oxycodone and sent the packages containing oxycodone overnight via Express Mail. Six of the seven packages also bore fake sender information. Bank records showed that large cash deposits were made into Foreste's account in Vermont within two weeks of the date each of the packages were sent. Based on this evidence, a rational juror could have inferred beyond a reasonable doubt that the packages sent by Foreste on each of those dates contained oxycodone.

---

[1] The Fourth Superseding Indictment charged Foreste with eight counts of drug distribution, with each count corresponding to a specific date or range of dates. App'x 59–65.

4

As to the money laundering counts, Foreste argues that there was insufficient evidence to sustain the jury's finding that the funds deposited into Foreste's account on November 18, 2013 and January 30, 2014 were the proceeds of drug sales.

For the period in which these deposits were made, Foreste had no job, and reported no income to the I.R.S. Clarke testified that Foreste sometimes got paid by his oxycodone customers in Vermont through bank deposits. Dennis Hackney, one of Foreste's oxycodone customers in Vermont, was directed by Foreste via text message to deposit money into Foreste's account, and Hackney was seen on a surveillance video making a deposit into an account at Foreste's Vermont bank on January 30, 2014. Foreste also instructed Hackney via text message to make a deposit into his account in the days before the November 18, 2013 deposit. This is sufficient evidence from which a rational juror could find that the money deposited in Foreste's account was the proceeds from sales of oxycodone.

**2.** Foreste argues his prosecution for conspiracy was foreclosed by a plea agreement entered into in May 2013, which resolved a prior charge for possession with intent to distribute oxycodone.

"We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." United States v. Riera, 298 F.3d 128, 133 (2d Cir. 2002). "To determine whether a plea agreement has been breached, we look to the reasonable understanding of the parties as to the terms of the agreement." Id.

The plea agreement at issue states, in relevant part:

> The United States agrees that in the event that MICHAEL FORESTE fully and completely abides by all conditions of this agreement, the United States will:

　　　　　　　a.　not prosecute him in the District of Vermont for any other criminal offenses known to the United States as of the date it signs this plea agreement, committed by him in the District of Vermont relative to his possession with the intent to distribute oxycodone.

Gov't App'x 3-4.

　　Foreste asserts that the Government knew that he participated in a conspiracy to distribute oxycodone prior to the date it signed the plea agreement, and therefore it was barred from prosecuting him for that conspiracy in this case.

　　The Government was not bound by its promise not to prosecute Foreste because Foreste breached the provision of the plea agreement that barred Foreste from committing crimes:

> If the United States determines, in its sole discretion, that MICHAEL FORESTE has committed any offense after the date of this agreement, has violated any condition of release, or has provided any intentionally false information to Probation, the obligations of the United States in this agreement will be void. The United States will have the right to recommend that the Court impose any sentence authorized by law and will have the right to prosecute him for any other offenses he may have committed in the District of Vermont.

Gov't App'x 4.　In 2016, Foreste was charged by a grand jury with criminal acts that occurred after the May 2013 plea agreement, including distribution of oxycodone in 2014, and money laundering in November 2013 and January 2014--and he was convicted by a jury of some of these counts.　Foreste's breach of the plea agreement relieved the Government of its obligation not to prosecute him, even for acts of which they already had knowledge.　See United

6

<u>States v. Gregory</u>, 245 F.3d 160, 164 (2d Cir. 2001) ("The Government's determination that [the defendant] had committed a crime and thus breached the cooperation agreement was not premised on bad faith, invidiousness, dishonesty, or unconstitutional considerations [and] [t]he Government was thus justified in voiding [the defendant's] cooperation agreement." (internal quotation marks and citations omitted)).

We have considered the defendant's remaining arguments and find them to be without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7