*United States v. Maldonado Villeda*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of June, two thousand twenty-six.

PRESENT:

> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                           No. 25-1748

FREDY ARMANDO MALDONADO VILLEDA,

> *Defendant-Appellant.*

_____

| | |
|---|---|
| **For Defendant-Appellant:** | EDWARD ZAS, Federal Defenders of New York, Appeals Bureau, New York, NY. |
| **For Appellee:** | BRANDON G. DAVIS (Dylan A. Stern, *on the brief*), Assistant United States Attorneys, *for* Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gary R. Brown, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 14, 2025 judgment of the district court is **AFFIRMED**.

Fredy Armando Maldonado Villeda ("Maldonado") appeals a judgment of conviction following his plea of guilty to one count of illegally reentering the United States in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1), for which he was sentenced to thirty-six months' imprisonment to be followed by one year of supervised release. On appeal, Maldonado contends that the government breached its plea agreement by arguing for an "upward departure" from Maldonado's Sentencing Guidelines range of ten to sixteen months' imprisonment "despite the absence of any new information and despite [the government's] express promise not to seek such a departure." Maldonado Br. at 2–3; *see* App'x

2

at 10–15 (plea agreement). The government's breach, Maldonado argues, requires vacatur of his sentence and a remand "for resentencing before a different judge." Maldonado Br. at 4. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

"We review interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002). Determining "whether a plea agreement has been breached" is a context-specific inquiry, and we "look to the reasonable understanding of the parties as to the terms of the agreement," *id.* (alteration adopted and internal quotation marks omitted), examining both the "precise terms of the plea agreement[]" and the "parties' behavior," *United States v. Wilson*, 920 F.3d 155, 163 (2d Cir. 2019). We also "construe plea agreements strictly against the [g]overnment" because it is "usually the party that drafts the agreement" and ordinarily possesses "awesome advantages in bargaining power." *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999). Accordingly, we resolve "any ambiguities in the agreement . . . in favor of the defendant." *Riera*, 298 F.3d at 133.

Applying these principles, we have observed that "the government's commentary" at sentencing may constitute a breach if it "reasonably appears to seek to influence the court in a manner incompatible with the agreement, . . . notwithstanding formal language of disclaimer." *United States v. Amico*, 416 F.3d 163, 167 n.2 (2d Cir. 2005). But even the government's remarks will not qualify as a breach if (i) they are "in response to a specific inquiry from the court"; (ii) "the plea agreement provide[s] that the government c[an] respond to the court's inquiries"; and (iii) "the government later . . . emphasize[s] that it was not advocating" for conditions that would constitute a breach. *Riera*, 298 F.3d at 134.

As evidence of the breach of the plea agreement, Maldonado points to the government's statements at sentencing that (i) "[he] had previously received a [forty-one]-month sentence for the same offense," which in the government's view should trigger a "ratcheting[-]up effect," Maldonado Br. at 19–20 (quoting App'x at 65), since "[e]very time you commit the same offense the punishment should increase," App'x at 65; and (ii) Maldonado's "criminal history score" understated "the extent and seriousness of his [criminal] record," Maldonado Br. at 20; *see also* App'x at 65 (prosecutor stressing that "for [Maldonado] to return before [the court]

4

and be facing ten to [sixteen] months flies in the face of accepted principles [of] criminal law").[1]

Maldonado contends that the government's arguments meet "the standard for upward departure(s)" set forth in the Guidelines, *see* U.S.S.G. § 4A1.3(a)(1) (Nov. 1, 2024 ed.), and therefore constituted an "encouraged basis" for departing upward from the Guidelines range, *United States v. Gayle*, 389 F.3d 406, 409 (2d Cir. 2004) (internal quotation marks omitted). But while the government's comments at sentencing may have strayed "too close in tone and substance to forbidden advocacy to have been well-advised," *United States v. Griffin*, 510 F.3d 354, 362 (2d Cir. 2007) (internal quotation marks omitted), we cannot say that they run afoul of the lines drawn in *Riera, see* 298 F.3d at 134–36.

*First*, the government's comments at sentencing "w[ere] in response to a specific inquiry from the court." *Id.* at 134. At the outset of sentencing, the district court correctly calculated Maldonado's Guidelines range, but it remarked that Maldonado's "Criminal History Category of III" was "unusual[ly]" low given

---

[1] After the district court indicated at sentencing that it would vary from Maldonado's Guidelines range, his counsel asked for "a further opportunity" to address the issues raised by the court. App'x at 75. The district court therefore agreed to postpone sentencing, the parties filed supplemental sentencing submissions, and a second sentencing hearing was held four months later. As relevant here, the disputed statements were all made during the first sentencing hearing.

his lengthy criminal history.   App'x at 155.   In particular, the district court noted that Maldonado's 2010 conviction for felony robbery – which involved "attack[ing]" an eighty-seven-year-old landlord and stealing "$24,000 in rent payments," *id.* at 71; PSR ¶ 24 – did not count for purposes of his *current* Guidelines range because it was over ten years old.   It was only after the district court queried whether the government wished "to say anything" before it imposed sentence, App'x at 64, that the prosecutor "acknowledge[d] a point that your Honor brought up," *id.* at 62, "in terms of the complicated criminal history in this case," *id.* at 68.   Because the government's remarks were made only after the district court expressed skepticism that the Guidelines properly accounted for "the seriousness of [Maldonado's] prior offenses" and his "pattern of recidivism," *id.* at 73, the government's statements do not suggest a breach of the plea agreement. *See United States v. Goodman*, 165 F.3d 169, 173 (2d Cir. 1999) (refusing to find breach of plea agreement when "it was [the district court], not the [g]overnment, who raised questions about" relevant sentencing adjustments).

*Second*, "the plea agreement provided that the government could respond to the court's inquiries."   *Riera*, 298 F.3d at 134.   The agreement emphasized that the "[U.S. Attorney's] Office will advise the [c]ourt and the Probation Department

6

of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the [c]ourt in determining the defendant's sentence." App'x at 11 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense [that] a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (quoting 18 U.S.C. § 3661)). The district court understood as much, and it construed the government's representations at sentencing as "consistent" with its "obligations to the court" and "more importantly," under "the [plea] agreement" itself, to provide "information relevant to sentencing," *id.* at 68, as the court weighed the "statutory requirement[s]" of 18 U.S.C. § 3553(a), *id.* at 74.

Moreover, even though the government "typically" drafts plea agreements to include a provision barring it from arguing for "a sentence on the higher range of the [G]uidelines," that stipulation was "specifically removed" from Maldonado's plea agreement. *Id.* at 69. And since "nothing in the plea agreement barred the government from forcefully advocating for a sentence at the top of the [Guidelines] range," the prosecutor was free to "cast[] pejorative light on [Maldonado] and his criminal activity" without running afoul of the

7

agreement's terms.  *Amico*, 416 F.3d at 165.  Put simply, the government did not breach the plea agreement by responding to the district court's inquiries about "the highly unusual factors" of Maldonado's case that "distinguish[ed] it from the bulk of the many [other] cases."[2]  App'x at 70.

*Third* and finally, the government "repeatedly emphasized that it was not advocating [for] an upward departure" in violation of the plea agreement – at both sentencing hearings and in its written submissions.  *Riera*, 298 F.3d at 134; *see, e.g.*, App'x at 68 ("I am not moving for an upward departure."); *id.* at 69 ("[W]e are [in] no way moving for an upward departure."); *id.* at 96 (government's supplemental sentencing memorandum "recommend[ing] a sentence within the Guidelines range of [six] to [ten] months' imprisonment");[3] *id.* at 165 (district court acknowledging "that [the government] hadn't made a motion for an upward departure").  Instead, the prosecutor explained that "any statements that [she]

---

[2] Because there was "already . . . a suggestion that the government was violating the plea agreement" at the first sentencing hearing, the district court – to eliminate any doubt – expressly limited the government to providing "facts only" in its supplemental sentencing submission. App'x at 77–78; *see id.* at 78 ("I don't want to hear numbers from [the government].  I don't want to hear months.  I don't want to hear anything about how long [Maldonado's sentence] should be.").

[3] The government has indicated on appeal that its supplemental sentencing memorandum "erroneously understat[ed] the applicable [Guidelines] range as [six] to [ten] months' imprisonment," Gov't Br. at 34, rather than ten to sixteen months' imprisonment, PSR ¶ 64.

ha[d] ever made" were geared toward "the appropriateness of a sentence on the higher" end of the Guidelines range, *id.*, which, again, was not barred by the plea agreement, *see id.* at 164. That the government "soon thereafter . . . repeatedly told the district court that it had not intended to advocate and was not advocating a departure," *Riera*, 298 F.3d at 136, differentiates this case from *United States v. Griffin*, where the "government did nothing to retract its questionable statements or otherwise ameliorate their impact" to "cure any breach," 510 F.3d at 365 (citing *Amico*, 416 F.3d at 165).

Though "statements by the government asserting that it did not intend to violate the plea agreement 'do not insulate [it] against a finding of breach if in fact what was said constituted an argument' that violated the plea agreement," *id.* (alteration adopted) (quoting *United States v. Vaval*, 404 F.3d 144, 153 (2d Cir. 2005)), our inquiry in this area is necessarily context-specific. Here, the government's repeated clarifications were sufficient "to clear up any confusion as to any possible implicit message of advocacy." *Riera*, 298 F.3d at 136.

In sum, on this record – where the district court raised the criminal-history concern first, the plea agreement permitted the government to provide sentencing information and advocate for the top of the Guidelines range, and the government

clarified its position before sentence was imposed and reaffirmed it at a second

hearing – the government's remarks did not breach the plea agreement.[4]  *See id.*

at 134.

*     *     *

We have considered Maldonado's remaining arguments and find them to

be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Because we conclude that the government did not breach the agreement, we have no occasion to decide whether any breach could be excused as harmless.